**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 1 7 1998

JAMES R. MANSPEAKER
CLERK

Case No. 98-WY-528-CB

STEPHEN MILES,

      Plaintiff,

v.

JOHN RAMSEY; NATIONAL ENQUIRER, INC., a Florida corporation;
JOHN SOUTH; DAVID WRIGHT; and JOHN DOES 1-20,

      Defendants.

---

### ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This case arose from two articles published by Defendant
National Enquirer (the "Enquirer") on October 21, 1997, and
November 11, 1997. In those articles, the Enquirer published
statements informed by "a source close to the Ramseys" explaining
that the Ramseys thought that Plaintiff Stephen Miles had killed
JonBenet. Other embarrassing and potentially defamatory
information was also published in these articles. Plaintiff then
filed this lawsuit alleging that the named defendants slandered,
libeled, committed outrageous conduct, and intentionally
inflicted severe emotional distress upon him in connection with
these stories.

Now before the Court is Defendant Ramsey's motion for
summary judgment as well as Defendant Enquirer et al.'s motion
for summary judgment. The Court, being fully advised, **FINDS AND
ORDERS:**

78

## Factual Background

### A.     The Articles

On October 21, 1997, the Enquirer published an article that involved Stephen Miles. (Compl. ¶ 10.) On the cover of this issue, the Enquirer published: "Jon Benet Bombshell, DAD: WE KNOW WHO DID IT, Exclusive interview with man Ramseys say killed JonBenet." (Compl. Ex. A.) The heading on the page the article appears states: "MOMMY AND DADDY: WE KNOW WHO DID IT!." (Compl. Ex. A.) Miles alleges that the October article specifically declares that Ramsey believed that Miles was JonBenet's killer and that Ramsey intended to suggest that Miles was the killer to law enforcement officials. (Compl. ¶ 11.) The October article attributes these statements to a "source close to the Ramseys." (Compl. Ex. A.) The article also states that Miles is a "drug addict," but this statement is not attributed to the source close to the Ramseys.[1] (Compl. Ex. A.) Notably, the Enquirer published the article, quoting "a source close to the Ramseys," where that close source said: "John Ramsey has confided," that he intends to suggest Stephen Miles is the killer of JonBenet and is most likely a pedophile. (Compl. Ex. A.)

---

[1]   In a document filed August 25, 1998, Mr. Miles admitted that he was and is a "drug addict." Plaintiff thus conceded summary judgment on this issue. This Court agrees that summary judgment should be granted on this issue. Accordingly, Defendants Enquirer's, South's, and Wright's motion for summary judgment on this allegation is **GRANTED**.

2

Miles is quoted in the article:

> "I shouldn't even be on the list of sex offenders.
> "I was convicted of bringing in a car loaded with pot
> from Mexico. I've been convicted of selling pot to a cop
> and for attempting to distribute a counterfeit controlled
> substance.
> "In 1989 I was arrested and charged with the sexual
> exploitation of a child, for taking a nude photograph of a
> 17-year-old boy. I was in jail for three months.
> "But then the charge was dropped. The photograph was
> not indecent. In fact, it has been featured in
> photographic magazines. Since he was 17, he wasn't a child.
> And we're still friends.
> "Because the sex case had been in the local paper, I
> couldn't get a job, neighbors warned me to stay away from
> their children and I was getting death threats.
> "But I was never convicted of a sex offense and I'm not
> a pedophile.

(Compl. Ex. A.)

The October 21, 1997, article is attributed to Defendants

John South and David Wright. (Compl. Ex. A.)


The November 11, 1997, article identifies Mr. Miles as a

pedophile and sex offender. (Compl. ¶ 12.) This article stated:

> "The cops started with the serious prospects – and
> have eliminated one by one," the close source revealed.
> "Now they're on their way to completing checks on
> the 'B-list' – even the most unlikely people the Ramsey
> attorneys have named."
> Included on that list are dozens of pedophiles and
> sex offenders living in Boulder. One of them, gay
> photographer Stephen Miles – investigated eight years
> ago for taking a nude picture of a 17-year-old boy –
> protested his innocence in an anguished interview
> published in The ENQUIRER.

(Compl. Ex. B.)

The November article is attributed to David Wright. (Compl.

Ex. B.)

These articles have caused Miles to suffer greatly.  He has been subjected to hatred, ridicule and contempt on numerous occasions.  None of the defendants have claimed that Mr. Miles did not suffer sufficient injury to bring these actions. Consequently, for purposes of this motion, the Court will assume that Miles has met the damages requirement (assuming damages were in fact required, i.e., that the libel or slander was not per se) is met.

**B.    Relevant Facts to John Ramsey's Involvement in this Case**

Miles alleges that between December 26, 1996, and November 1997, Defendant Ramsey uttered and wrote false statements to others indicating that Miles murdered his daughter, was involved in the murder, and that Miles was a pedophile.  (Compl. ¶¶ 6-7.) Given these allegations, Miles has sued Ramsey for libel, slander, outrageous conduct, and intentional infliction of emotional distress.  Mr. Miles relies on the October and November Enquirer articles in opposition to Defendant Ramsey's motion. The October article's second sentence states:  "'John and Patsy will claim that the real killer is a neighbor, Stephen Miles, who was once arrested and accused of a sex offense against a minor,' a source close to the Ramseys said."  (Compl. Ex. A.)  The October article also stated that "John Ramsey has confided" to a close source that he will implicate Stephen Miles as the murderer of his daughter and also that Stephen Miles is a most likely a

pedophile.[2]  This is the only evidence that Mr. Ramsey made the alleged defamatory statements.  Finally, Mr. Ramsey was recently deposed by the plaintiff, but this deposition did not lead to any evidence that supports Plaintiff's allegations.

### C.    Relevant Facts to the Pedophile/Sex Offender Allegation

In March 1990, Miles told his therapist that he had oral sex with a 14 year-old boy.[3]  In his deposition, Miles contends that this information was incorrect, that in fact he had fondled the boy's penis from the outside of his pants and the boy was over the age of consent, not 14.  (Miles Dep. at 191.)

Miles has also testified that during the '70s and '80s, when Miles was in his 30s and 40s, he often had teenage boys at his home.  (Miles Dep. at 488.)  Miles thought that by giving these young men (mostly gay young men) a place to go he was doing a good thing.  (Miles Dep. at 488.)  Miles did not view himself as an authority figure, but instead viewed himself as an equal to the teenagers who came to his home.  (Miles Dep. at 488.)  Miles admitted that "sex happened" at his home.  (Miles Dep. a t 489.)  Miles also admitted that he smoked marijuana with teenage boys and drank alcohol with them during this time.  (Miles Dep. at

---

[2]   Ramsey's counsel rely heavily on the fact that Mr. Miles "admitted" that he has no evidence that John Ramsey made any written or spoken defamatory statements. (Def. Ramsey's Mot. Summ. J. at 3-5.)  Whether Mr. Miles admitted this in a deposition is of no consequence.  It is apparent from documents submitted to the Court that Mr. Miles does have "some" proof:  the October Enquirer article.

[3]   This statement is admissible evidence as an admission of a party opponent.

345.)  Miles admitted that he had consensual sex with teenage
boys during the '70s and '80s.  (Miles Dep. at 195.)  He
estimated the had sex with as many young men as he "could count
on both hands."  (Miles Dep. at 195-96.)  Miles estimates that
these boys were 16-17 years old.  (Miles Dep. at 196.)

The Boulder Police became aware of potentially illegal
activities occurring at Miles' house in the late '80s.  In a
search warrant executed on June 10, 1989, the police located
boxes of pictures containing nude males, 9-20 years of age.
(Miles Dep. Ex. 17 at 1.)  One picture, a photo of a nude 17-
year-old boy, alerted the police.  As a result of what was found
in this search, Miles was arrested and charged with five counts
of sexual exploitation of children and one count of contributing
to the delinquency of a minor.  (Miles Dep. Ex. 17 at 4.)  Miles
was never convicted of the exploitation of children charge, but
was convicted on one count of contributing to the delinquency of
a minor.

Miles has admitted that because of the '89 arrest, his
reputation suffered considerably.  (Miles Dep. at 253.)  Because
of that arrest, Miles asserts that he was wrongfully branded as a
sex offender.  (Miles Dep. at 253.)

Miles is a professional photographer.  He insists that he
did not have any pictures of boys with their genitalia showing in
his home--that is, the pictures of nude children were planted in

6

his home.  (Miles Dep. at 122.)  Miles does admit that there was a photograph of two males appearing to simulate oral sex found in his home, but he vehemently denies taking the picture.  (Miles Dep. at 124.)  Further, the picture of the 17-year-old boy was done consensually and was published in a magazine.  (Pl.'s Opp. to Summ. J., Ex. E.)  Miles has testified that he was often hired by the parents of these juvenile children, and that the parents participated or watched the photo session.

Miles also contends that although he had sex with teenage boys, none of these boys were under the age of consent.  Thus, these boys were not "children" such that sexual contact with them would constitute a criminal offense.  Further, under Colorado criminal law, to be a "sex offender" one must be convicted of a "sex offense," and Miles was never convicted of a "sex offense;" thus he cannot be a "sex offender."

**D.  Relevant Facts to the "Killer" Allegation**

Miles asserts that the October article directly suggested that he killed JonBenet Ramsey.  (Compl. ¶ 11.)  But Miles admits that the Enquirer did not accuse him of killing JonBenet.  (Miles Dep. at 506.)  Instead, Miles contends that the articles exaggerated and manipulated the story at his expense.  (Miles Dep. at 506.)  Miles has asserted that, in particular, the title of the October article leaves a false impression.  (Miles Dep. at 507.)

Detective Jane Harmer of the Boulder Police Department has confirmed that "between June 1997 and early 1998, Miles was among the persons considered as suspects in the Boulder Police Department's investigation of the murder of JonBenet Ramsey." (Defs. Enquirer et. al.'s Mem. Supp. Summ. J., Ex. E.)

## Analysis

"Summary judgment is appropriate if the pleadings and other documents submitted before the court 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" <u>Hennigh v. City of Shawnee</u>, 155 F.3d 1249, 1253 (10th Cir. 1998) (quoting Fed. R. Civ. P. 56(c)). Accordingly, this Court views the evidence in the light most favorable to Miles. See <u>Baptiste v. J.C. Penney Company, Inc.</u>, 147 F.3d 1252, 1255 (10th Cir. 1998). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and a 'genuine' issue exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Occusafe, Inc. v. EG&G Rocky Flats, Inc.</u>, 54 F.3d 618, 621 (10th Cir. 1995) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). Given these standards, this Court turns to Defendants' motions for summary judgment.

The Court has jurisdiction over this action via the diversity statute, 28 U.S.C. § 1332. "In determining whether there is a genuine issue of material fact, we must apply the

substantive law of Colorado." <u>Anderson v. Cramlet</u>, 789 F.2d 840, 842 (10th Cir. 1986).

## I. Plaintiff's Rule 56(f) Motion is Denied

Plaintiff has moved pursuant to Rule 56(f) of the Federal Rules of Civil Procedure to continue this summary judgment motion because certain evidence is unavailable. Rule 56(f) allows summary judgment motions to be continued when the moving party is unable to present facts essential to justify the party's opposition to summary judgment.

Plaintiff contends that Defendants have hampered discovery because they will contest all discovery requests under Colorado's Press Shield Law. Plaintiff also contends that Defendant Ramsey was refusing to answer interrogatories and delaying the taking of his deposition. Given these problems, Plaintiff asserts that he has been severely hampered from developing contested facts in the exclusive control of Defendants and requests that this motion be continued until discovery from Ramsey is completed as well as other reasonable means of discovery is completed by Plaintiff.

Unfortunately, Plaintiff's motion must fail. A sworn affidavit is a prerequisite to granting a Rule 56(f) motion. <u>See Committee for the First Amendment v. Campbell</u>, 962 F.2d 1517, 1521 (10th Cir. 1992). The affidavit must explain why facts that will preclude summary judgment cannot be presented. <u>See id.</u> "This includes the probable facts not available and what steps

9

have been taken to obtain these facts." Id.  The nonmovant must
also explain how the grant of additional time will allow him to
defeat summary judgment. See id.

Plaintiff's affidavit is not sworn under penalty of perjury.
It is settled law in this circuit that unverified statements of
attorneys are insufficient to grant a rule 56(f) motion.  See id.
at 1522.  Further, Plaintiff does not explain in this affidavit
what facts are not available to him and how the grant of
additional time will allow him to defeat summary judgment.  Rule
56(f) is not invoked merely by asserting that discovery is
incomplete or that specific facts necessary to defeat summary
judgment are unavailable.  See Pasternak v. Lear Petroleum
Exploration, Inc., 790 F.2d 828, 833 (10th Cir. 1986).

Further, Plaintiff relies on the affidavit of William
Michael Whelan.  Mr. Whelan is not counsel of record in this
case.  Curiously, Lee Hill, Plaintiff's counsel of record, did
not submit an affidavit.  Plaintiff's failure to comply with Rule
56(f) constitutes waiver.

Even if the waiver were not present, the Court in its
discretion would deny the motion.  Defendant Ramsey's deposition
has now been taken.  This Court has delayed ruling on this motion
for almost two months and the close of discovery is near.  By
presenting a Rule 56(f) motion, Plaintiff has invoked the
discretion of this Court.  See id.  And Plaintiff has failed to

persuade the Court that further discovery would bring evidence sufficient to defeat summary judgment.

Therefore, Plaintiff's Rule 56(f) motion is **DENIED**.

## II.   Colorado Defamation Law

A defamatory communication is one that "tends to subject a person to public hatred, contempt or ridicule, or cause him or her to be shunned and avoided." Stump v. Gates, 777 F. Supp. 808, 825 (D. Colo. 1991), aff'd, 986 F.2d 1429 (10th Cir. 1993).

Under Colorado law, the elements of defamation are: (1) a defamatory statement about another, (2) published to a third party, (3) with the publisher's fault amounting to at least negligence (actual malice in our instance), and (4) when a statement is not defamatory per se, the plaintiff must plead special damages.  See Williams v. Second Judicial Dist., 866 P.2d 908, 911 n.4 (Colo. 1993).

A distinction exists in defamation law between matters of public concern and purely private matters.  See Williams v. Continental Airlines, Inc., 943 P.2d 10, 17 (Colo. App. 1997). When a matter is one of public concern, the First Amendment affords special protections and a heightened burden applies: "[A] plaintiff is required to prove the statements falsity by clear and convincing evidence."  Id.; Philadelphia Newspapers, Inc., 475 U.S. 767, 776-77 (1986).  Whether a subject is private or public concern is a question of law.  See Continental

<u>Airlines, Inc.</u>, 943 P.2d at 17.

"Generally,- a matter is of public concern whenever 'it
embraces an issue about which information is needed or
appropriate,' or when 'the pubic may reasonably be expected to
have a legitimate interest in what is being published.'" <u>Id.</u>  The
defendants assert that the articles' issue was the JonBenet
murder investigation, something which clearly satisfies the
public concern standard.  Plaintiff has not addressed this issue
in his brief and presumably concedes the point.  The Court finds
that the JonBenet murder investigation falls in the later
category--one in which the public may have a legitimate public
interest.  It is undeniable that JonBenet's murder investigation
has drawn almost unprecedented media attention.  Given the media
spectacle that surrounds the investigation, it is reasonable to
assume that the public at large would legitimately be interested
in the Enquirer's statements about the investigation, despite the
Enquirer's tabloid status.

Because the Court has determined that the articles involve a
matter of public concern, the plaintiff must prove that
Defendants knew the statements were false or made them with
reckless disregard for their truth.  <u>See Walker v. Colorado
Springs Sun, Inc.</u>, 538 P.2d 450, 457 (Colo. 1975), <u>overruled on
other grounds by Diversified Management, Inc. v. Denver Post,
Inc.</u> 653 P.2d 1103 (Colo. 1982).  In <u>Diversified Management</u>, the

Colorado Supreme Court adopted the definition of reckless disregard announced in <u>St. Amant v. Thompson</u>, 390 U.S. 727 (1968). Under this definition of reckless disregard, there must at least be "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." See <u>St. Amant</u>, 390 U.S. at 1325. Prior to adopting this definition, the plaintiff was not required to prove that the defendant entertained subjective thoughts as to the truth of his publication--now he must prove just that. <u>See Diversified Management</u>, 653 P.2d at 1109.

"Substantial truth" is an affirmative defense to defamation in Colorado. See <u>Anderson</u>, 789 F.2d at 843. "A defendant asserting truth as a defense in a libel [or slander] action is not required to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting, of the matter is true." <u>Id.</u> (citations omitted). The question is really whether the statement produces a different effect on the reader than the literal truth. See <u>id.</u> Whether an alleged defamatory statement is substantially true is a factual inquiry. <u>See id.</u> When deciding this inquiry it is important to remember that "technical errors in legal terminology and reports of matters involving violation of the law are of no legal consequence" in a defamation case. See <u>id.</u> at 844. The inquiry instead should focus on how an average reader would differentiate

between the statements.  <u>See id.</u>

### III. **Defendant John Ramsey's Motion for Summary Judgment is Granted**

Ramsey has argued that Plaintiff has no proof of the first element for defamation--proof that Ramsey uttered or wrote a defamatory statement.  <u>See</u> <u>Stump</u>, 777 F. Supp. at 825; <u>Pittman v. Larson Distributing</u>, 724 P.2d 1379, 1387 (Colo. App. 1986). Miles counters that he does have some proof:  the October and November Enquirer articles.  The only hard "proof" in the articles is where a source close to the Ramseys was quoted as saying:  "John Ramsey has confided" that he will implicate Steven Miles as the murderer of JonBenet and Miles is a pedophile. However, even assuming that this was sufficient proof for Mr. Miles to defeat Ramsey's summary judgment motion, the Court may not consider this evidence--the statements attributed to John Ramsey in the articles are inadmissible hearsay; therefore, Mr. Miles has no admissible proof that Ramsey made the alleged statements.  To the dismay of the Court, Defendant Ramsey's counsel did not raise this argument in his motion.

To understand this analysis, it is necessary to examine the context in which this article is being introduced.  Defendant Ramsey has denied that he ever made any defamatory statements and has not acknowledged the newspaper article in question.  To rebut this assertion, the plaintiff points to the newspaper article as proof that Mr. Ramsey did make defamatory remarks or writings.

14

The plaintiff is introducing the articles as proof that Ramsey made the statements attributed in the article. Thus, the only hard proof--"John Ramsey has confided"--is being offered for the truth of that assertion.

After close inspection of the article, one sees that any information which can be attributed to Ramsey in this article derives from the one "John Ramsey has confided" quote. In that portion of the October article, the Enquirer quoted a close source: "John Ramsey has confided," that he and his wife plan to implicate Stephen Miles as the murderer and that he is most likely a pedophile. The second sentence of the article--where the Enquirer asserts that John and Patsy Ramsey will implicate Miles as the killer was derived from the "confided" quote as well. That is, the second sentence is merely paraphrasing the "confided" quote.

When the article is introduced as proof John Ramsey made the statements in question, the newspaper article is inadmissible hearsay. See, e.g., Rotman v. Hirsch, 199 N.W.2d 53, 54-55 (Iowa 1972); Daniel J. Feld, Admissibility of Newspaper Article as Evidence of the Truth of Facts Stated Therein, 55 A.L.R.3d 663 (1974 & Supp. 1995). Courts have uniformly found that newspaper articles are inadmissible hearsay when the article was not written or acknowledged by the defendant, yet is produced as

proof of facts stated in that article.[4]  See 55 A.L.R.3d at §
5[b].  In this instance, Plaintiff has presented an assertion,
made by a source close to the Ramseys, stating that John Ramsey
"confided" those alleged defamatory statements.  The truth of the
matter asserted, consequently, is that John Ramsey did in fact
"confide" those alleged defamatory words.  These statements do
not fall under any recognized exception to the hearsay rule.[5]

Moreover, the titles of the article merely state an
interpretation of the Ramsey "confided" quote:  "[Mommy and] Dad:
We Know Who Did It."  This title was derived from the "confided"
hearsay quote just analyzed.  That is, the topic lines are the
Enquirer's interpretation of what the close source told the

---

[4]  Moreover, the newspaper article could likely be inadmissible because it is
not the best evidence.  Indeed, some courts have used this as a justification for
keeping newspaper articles out of evidence.  The best evidence in this case is
Defendant Ramsey or the close source.

[5]  The Court notes that the statements in question do not fall under one of the
"non-hearsay" exceptions:  admission of a party-opponent.  F.R.E. 801(d)(2).  This is
because the statement must be examined on two levels.  The first level of analysis is
the alleged statement by Ramsey to the close source.  The second level is the
statement of the close source to the Enquirer.  This is what some call hearsay upon
hearsay--when a person [the Enquirer] relays the assertion of a second person [the
close source] that is an assertion of the third person [John Ramsey].  On the first
level, Ramsey's statement to the close source is an admission.  It is a statement made
by a party that is being introduced against his interest.  But on the second level
there is no admission.  This is a statement by a close source to the Enquirer, not a
statement of a party.  There has been no evidence that the "source close to the
Ramseys" was an agent of the Ramseys so it cannot be attributed to him in a
representative capacity.
    Further, the article does not fall under the exception for "words of independent
legal significance."  Courts recognize that in a suit for defamation, defamatory words
are normally "words of independent legal significance" because they are being
introduced not for their truth, but only to prove that they were uttered.  See, e.g.,
Jauch v. Corley, 830 F.2d 47, 52 (5th Cir. 1987).  If the close source had come
forward in this instance, our analysis would be done, the words would be admissible.
However, in our instance we again have the second level of analysis.  It was the
Enquirer that printed what the close source, not Ramsey, had told South and Wright.
So here the article is being introduced to prove that the words were uttered by
Ramsey.  Here there are two levels of hearsay, and double hearsay such as this is
inherently unreliable.  The justification for this hearsay exception does not exist in
this circumstance and will not be applied today.

Enquirer John Ramsey said.  They are not directly attributable to Ramsey--they are just interpretations of what Ramsey said and thus are subject to the same hearsay analysis.

Likewise, contrary to Miles's assertion, the November article does not contain any evidence of statements attributed to John Ramsey.  It merely speaks of a "close source."  It does not say it is a close source to the Ramseys, it could be a close source to the investigation.  Furthermore, the source does not attribute any statements made by John Ramsey like the October article did.

This is exactly the type of circumstance in which the hearsay rule must be invoked.  The hearsay rules exist in our courts because statements out of court (1) asserted by a person, (2) which assert that another person made a statement--when these statements are offered for the truth of the matter asserted, are inherently unreliable.  In this circumstance there is double hearsay because we have (1) an out of court statement asserted by the Enquirer, (2) which asserts that a close source made a statement, (3) who asserts that John Ramsey made a statement. Taking one person's word that another person made a certain statement and then holding that person accountable for that statement has dangerous pitfalls.  Among them, there is no opportunity to cross-examine the person (in this case a deposition of Mr. Ramsey did not turn up any proof that supports

Plaintiff's position); the statement is not made under oath; and
such statements are often subject to misinterpretation and
misreporting.  Indeed, some critics of the tabloid newspapers
would point to the Enquirer as a major reason for the hearsay
rule:  holding people accountable for quotes made by "sources
close to John Ramsey" is unjustifiable and cannot be allowed as
evidence that Ramsey made these statements.

Likewise, even if the Court were to accept Plaintiff's
argument--that the overall tenor of the articles "imply" that
John Ramsey made the statements--the Court finds this evidence
insufficient as a matter of law to survive summary judgment.[6]
First, even with articles as evidence there is no evidence that
Ramsey libeled the plaintiff--at best it is slander.  Further,
this type of tenuous evidence should never be presented to a
jury.  The plaintiff has had an opportunity to depose Ramsey, yet
has not come up with any evidence.  He has attempted to delay

---

[6]  The Court notes that a fair reading of the articles would interpret the
articles as asserting that "John Ramsey said these things" and "the close source told
the Enquirer."  This is what some scholars and courts have called implied hearsay.
See David F. Binder, Hearsay Handbook § 1.10 (3d ed. 1991 & Supp. 1998).  An example
in Mr. Binder's book is illustrative.  Assume the issue is whether there were fish in
Zilch's lake.  A witness testifies that before he went to the lake, he called Zilch
and asked whether there were fish in the lake. Suppose the witness then testified "as
a result of Zilch's answer, I took my fishing gear along."  This is hearsay.  It
implies that Zilch said yes.  Similarly, in our circumstance the newspaper is
asserting that "a close source said that Ramsey said uttered these statements."  On
this motion, the issue is whether Ramsey in fact said those things.  This is implied
hearsay under Plaintiff's liberal reading of the articles.  Even though the newspaper
may not have printed "Ramsey said these things," it is implied, and this implication
is being offered for the truth of the matter asserted.  If the Court did not believe
the truth of these assertions, the articles would be irrelevant.  Accordingly, to
justify the articles relevancy for proof of Ramsey uttering these statements, you must
believe the assertions that Ramsey uttered these statements and that the close source
uttered these statements.  Given that these assertions are being introduced to prove
the truth of that assertion, such implications are inadmissible.

summary judgment, but has failed to persuade the Court he had sufficient reasons. The fact that Plaintiff has failed to uncover sufficient evidence will not preclude summary judgment. Standing on their own, the articles simply are too tenuous in nature and unreliable to drag Mr. Ramsey through a jury trial. No reasonable trier of fact, based on the evidence presented to this Court, could find by clear and convincing evidence that Ramsey uttered those statements.

Accordingly, Defendant Ramsey's motion for summary judgment is **GRANTED** with respect to Plaintiff's libel and slander counts. As Plaintiff's outrageous conduct and intentional infliction of emotional distress claims are ancillary to the libel and slander claims, summary judgment is also **GRANTED** on these Counts. See Lewis v. McGraw-Hill Broadcasting Co., 832 P.2d 1118, 1124-2525 (Colo. App. 1992). Thus, all of Plaintiff's Counts against Defendant Ramsey are **DISMISSED WITH PREJUDICE.**

## IV. Enquirer's, South's, and Wright's Motion for Summary Judgment is Denied in Part and Granted in Part

These defendants have argued for summary judgment on the ground that the October and November articles were substantially true. The Court will address this argument in turn as to the pedophile/sex offender allegation and the killer allegation.[7]

---

[7] Curiously, these defendants did not argue that Plaintiff failed to satisfy the "actual malice" requirement. Defendants, as the movants on summary judgment, bear the burden of first establishing that no genuine issue of material fact exists on an issue. Therefore, because Defendants have only argued "substantial truth" in their motion for summary judgment, the Court will only address that contention. These

## A. Pedophile/Sex Offender Allegation

In the October article, the Enquirer quoted a close source who stated that John Ramsey planned to implicate an intruder and that Miles was "most likely a pedophile." The November article states:

> The cops started with the serious prospects--and have eliminated them one by one, the close source disclosed.
>
> Now they're on their way to completing checks on the 'B-list--even the most unlikely people the Ramsey attorneys have named.
>
> Included on that list are dozens of pedophiles and sex offenders living in Boulder. One of them, gay photographer Stephen Miles--investigated eight years ago for taking a nude picture of a 17-year-old boy-- protested his innocence in an anguished interview published in The ENQUIRER.

The defendants have argued that calling Miles a sex offender and a pedophile is the substantial truth.[8] The Court must analyze the allegations in the context in which they were written. See Burns v. McGraw-Hill Broadcasting Co., 659 P.2d 1351, 1357 (Colo. 1983). From this, the defendants argue that the stories are substantially true. They argue that when read in

defendants have not carried their burden of showing that no genuine issue of material fact exists as to the other elements of defamation.

[8] The defendants have argued as an initial matter that the article cannot be reasonably read to state that Miles is a sex offender and a pedophile--he has to be one or the other. The Court rejects this argument. In context, it is possible to be both a sex offender and a pedophile and the article is written in such a manner that it is ambiguous whether the Enquirer is stating that Miles is one or both. Accordingly, a genuine issue of material fact exists as to whether the Enquirer stated that Miles was a sex offender or a pedophile or both. The Court will analyze "substantial truth" for both the sex offender and pedophile allegation.

context, the pedophile and sex offender allegation was written in such a way that it was referring to Miles's 1989 arrest. Nevertheless, Plaintiff correctly points out that he was never convicted of sexual exploitation charges, and that in fact they were dismissed and unsubstantiated. He has submitted an affidavit of that young man who stated the photo was consensual and that the photo was eventually published in a magazine. Plaintiff's deposition testimony also supports this proposition. Further, Plaintiff has testified that he only had sex with young men over the age of consent. This context argument, by itself, does not persuade the Court that the whole truth would produce substantially the same result as what the Enquirer published. Giving the plaintiff all favorable inferences, a reasonable fact-finder could conclude that Plaintiff's version of the facts were true, and that if they knew all of these facts, it produced a different result in the public's eye than calling one a sex offender and pedophile. At this stage in the proceedings, the Court must conclude that when one accepts the facts, Miles could prove by clear and convincing evidence that the published statements were more injurious than the truth.

The defendants next argue that even if the Court accepts the pedophile and sex offender allegations in their abstract, the Enquirer published the substantial truth. They argue that the uncontroverted evidence shows that: (1) Plaintiff fondled a 14

year old boy, (2) he was indicted on sexual exploitation charges, and (3) he had sex with high school students when Miles was in his 30s and 40s. This, the defendants argue, would produce substantially the same result as publishing an article naming Miles as a sex offender and pedophile.

Plaintiff first responds that he is not technically a sex offender or a pedophile. The Court rejects this argument standing on its own. As the court of appeals stated in <u>Anderson v. Cramlet</u>, technical errors in legal terminology are of no significance, the relevant inquiry is how an average person on the street would perceive the remarks. <u>See</u> 789 F.2d at 844.

Nevertheless, giving all inferences in favor of the plaintiff, he has produced enough evidence to survive summary judgment on this issue. When one reads the defendants' submitted facts, one would agree that naming Miles as a pedophile and sex offender would produce substantially the same result. But a close reading of Miles's deposition reveals that the whole truth paints a different picture--one that a reasonable trier of fact could view as substantially different than being a sex offender or pedophile. First, Miles contends that all of the young men were over the age of consent--including the young man the defendants assert was 14 (Plaintiff has denied that this person was 14). Second, although he was indicted on sexual exploitation charges, he contends that these were unsubstantiated and

22

dismissed. The affidavit filed supports this assertion. Indeed, Miles was never convicted on this charge and it is for the trier of fact to discern under what circumstances this happened. Third, the circumstances under which Miles had young men over at his house during the 70s and 80s could reasonably be viewed negatively or positively. Giving all inference to the plaintiff, if a fact-finder accepts Plaintiff's view of that period in his life, he would not be considered anything close to a sex offender or pedophile.

Defendants argue that the <u>Lindemuth v. Jefferson County School Dist. R-1</u>, is on "all fours" and compels summary judgment in this case. <u>See</u> 765 P.2d 1057 (Colo. App. 1988). In <u>Lindemuth</u>, the plaintiff brought a claim of defamation for calling the plaintiff a "child molester." <u>See id.</u> at 1058. The plaintiff had pleaded nolo contendere to charges of child molestation fourteen years earlier. <u>See id.</u> The plaintiff had also admitted in a deposition that this charge referred to him performing unnatural carnal copulation with an eleven-year-old boy. <u>See id.</u> The court granted summary judgment on this claim, finding that his sworn deposition testimony admitted that naming him as a "child molester" was the substantial truth. <u>See id.</u>

However, <u>Lindemuth</u> is distinguishable from this case. In our instance, as Plaintiff correctly asserts, Plaintiff has not admitted to having any contact with a boy under the age of

23

consent.  In fact, he vehemently denies such a charge.  Plaintiff instead asserts that he only had contact with young men that were over the age of consent.  This is not a matter of "technical legal terminology."  Calling one a sex offender or a pedophile could produce a substantially different result than the facts Miles has testified to in his deposition.  Further, Miles was never convicted of a sex offense like the plaintiff in Lindemuth.

The Court must accept the most favorable version of the facts as they apply to Miles.  He has presented evidence that the sexual exploitation charges were unsubstantiated.  The Court has no information to doubt that this is anything other than true at this point.  Miles testified that he was a professional photographer, and this puts the naked pictures found in his home in a different light.  He has never admitted to having an inappropriate relationship with a young boy under the age of consent.  These facts, when taken as a whole, are simply different from Lindemuth, where the plaintiff had been convicted of child molestation and admitted as much in a sworn deposition.

Finally, the defendants have submitted a supplemental brief. In that brief, the defendants point to the fact that Plaintiff's expert would not testify that Miles is not a pedophile. However, as the Court has already pointed out, when one reads the facts as a whole, giving the plaintiff all favorable inferences, a fact-finder could conclude that Miles was not a pedophile and

that naming him as one was defamatory.

As the outrageous conduct and intentional infliction of emotional distress claims are ancillary to the libel and slander claims, these claims will also survive summary judgment as they pertain to the pedophile and sex offender allegations.

Therefore, Defendant Enquirer's, South's, and Wright's motion for summary judgment on the pedophile and sex offender allegations is **DENIED**.

B.    **Killer and Suspect Allegation**

Regarding this allegation, Plaintiff mainly relies on the fact that the headlines on the front of the Enquirer and the inside cover state: "Daddy: We Know Who Did it."  First, as Plaintiff conceded in his deposition, the Enquirer did not directly suggest that he killed JonBenet.  Further, this statement must be considered in the context of the entire story, and not on its own.  See Burns, 659 P.2d at 1357; Molin v. Trentonian, 687 A.2d 1022, 1023-24 (N.J. Super.) ("[T]he majority of jurisdictions support the rule that headlines are to be construed in conjunction with their accompanying articles." (citing cases), cert. denied, 704 A.2d 20 (N.J. 1997), cert. denied, 119 S. Ct. 239 (1998).  The overall tenor of the articles do not suggest that Miles is the killer of JonBenet.  In fact, a fair reading of the articles suggests that the Enquirer believed that Miles was not the killer.  The articles quote a close source

25

who says that John Ramsey would name the plaintiff as the killer if he was arrested. But the story goes on to interview Miles. There, it puts Miles's side of the story forward. The story did not implicate Miles as the killer and no reasonable trier of fact could conclude otherwise when the articles are read as a whole. The words were not defamatory.

Miles asserts that the "suspect" allegation should be considered separately. First, this allegation is noticeably absent from his complaint. But for the sake of completeness, the Court will address this allegation concisely. Even if Miles were allowed to pursue this allegation, Defendants have produced an affidavit of Boulder Detective Jane Harmer. In her affidavit she states that Miles was in fact a suspect in the JonBenet murder investigation in 1997 and early 1998. Plaintiff responds by attempting to introduce hearsay statements from various sources. But because these statements are being offered to prove the truth of the matter asserted--that Plaintiff was not a suspect in the investigation--the statements are inadmissible. Plaintiff never submitted proper affidavits, only affidavits of "people who spoke to someone and that someone said this." This evidence is inadmissible and wholly insufficient in any event. Accordingly, the Court finds that naming Miles as a suspect was substantially true.

As Plaintiff's claims for outrageous conduct and intentional

infliction of emotional distress are ancillary to Plaintiff's libel and slander claims, these claims **ARE DISMISSED WITH PREJUDICE AS THEY APPLY TO THE KILLER AND SUSPECT ALLEGATIONS.**

Accordingly, Defendant Enquirer's, South's, and Wright's motion for summary judgment on Plaintiff's "killer" and "suspect" allegation is **GRANTED**, and Plaintiff's aforementioned allegations are **DISMISSED WITH PREJUDICE.**

### Conclusion

For the foregoing reasons, Plaintiff's Rule 56(f) motion is **DENIED.** Defendant Ramsey's motion for summary judgment is **GRANTED IN ITS ENTIRETY.** Plaintiff's claims against Defendant Ramsey are thus **DISMISSED WITH PREJUDICE.** Defendant Enquirer's, South's, and Wright's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.** The defendants' motion for summary judgment on the "drug addict" allegation is **GRANTED,** and thus Plaintiff's claims are **DISMISSED WITH PREJUDICE** as they relate to that allegation. The defendants' motion for summary judgment on Plaintiff's libel and slander claims, as they incorporate the "pedophile" and "sex offender" allegations, is **DENIED.** But Defendants' motion for summary judgment is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE** as Plaintiff's claims incorporate the "killer" and "suspect" allegations. Likewise, Defendants' motion for summary judgment on Plaintiff's

27

outrageous conduct and intentional infliction of emotional distress claims is **DENIED** as it applies to the pedophile and sex offender allegations, but is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE** as they apply to the killer and suspect allegations.

Dated this 14ᵗʰ day of December 1998.

_Clarence A. Brimmer_
Clarence A. Brimmer
United States District Judge

ENTERED
ON THE DOCKET

DEC 1 7 1998

JAMES R. MANSPEAKER
CLERK
BY _____

Case Number: 98-WY-528-CB

I certify that a copy of the attached has been (*) hand delivered; (**) placed in respective court pickup-box; or (***) deposited in the United States mails, postage prepaid, addressed to the following:

Dated: _Dec 17, 1998_

JAMES R. MANSPEAKER, CLERK

By: _Yvonne M Kellogg_
Deputy Clerk

cc:    Magistrate Judge Pringle

W. Lee Hill ***
P.O. Box 21181
Boulder, CO 80308

Dennis Blewitt ***
1790 30th St. #305
Boulder, CO 80301

Andrew M. Low **
Davis, Graham & Stubbs
D.C. Box No. 3

William R. Gray ***
Purvis, Gray,Schuetze & Gordon
1050 Walnut St. #501
Boulder, CO 80302

John P. Craver ***
Claire Diaz
White and Steele, P.C.
1225 17th St. #2800
Denver, CO 80202-5528

Gerson Zweifach ***
Steven Farina
Matthew Herrington
Williams & Connolly
725 12th St., N.W.
Washington, D.C. 20005